## BALTIMORE & O. R. Co. *v.* ANDREWS.

*(Circuit Court of Appeals, Sixth Circuit. June 6, 1892.)*

1. **CIRCUIT COURT OF APPEALS—DATE OF CREATION.**
   Act March 3, 1891, creating circuit courts of appeals, took effect immediately, so as to permit appeals to the new courts to be taken at once. *Railroad Co.* v. *Bennett*, 49 Fed. Rep. 598, followed.

2. **COSERVANTS—COLLIDING TRAINS.**
   A brakeman on one train is a coservant of the conductor and engineer of another train, and, if killed in a collision caused entirely by the negligence of the latter, the company is not liable. *Railroad Co.* v. *Ross*, 5 Sup. Ct. Rep. 184, 112 U. S. 377, distinguished.

Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by Samuel P. Andrews, administrator of the estate of Charles Reynolds, deceased, against the Baltimore & Ohio Railroad Company. Verdict and judgment for plaintiff. Defendant brings error. Reversed.

*J. H. Collins*, for plaintiff.

*W. W. Skiles*, for defendant.

Before JACKSON, Circuit Judge, and SAGE and SWAN, District Judges.

SAGE, District Judge.    The action below was brought to recover damages for the death of Charles Reynolds, alleged to have resulted from the negligence of the defendant below.    On the 14th day of February, A. D. 1890, the deceased was a brakeman on west-bound freight train No. 37, on the Chicago division of the railway of the defendant below, and while in the discharge of his duty as such was killed in a collision with east-bound freight train No. 88, near the town of Bairdstown, a station on the line of said road.    It appears from the bill of exceptions that upon the trial testimony was introduced on the part of the plaintiff, and also of the defendant, "proving" that train No. 88, on the date named, left Garrett, Ind., with Theodore Cruder acting as conductor, and J. M. Smith as engineer.    It "was run under the exclusive orders, direction, and supervision of the train dispatcher and the superintendent of the Chicago division of the defendant's railroad."    The train dispatcher gave instructions by telegraph to the engineer and conductor as to the movements of the train, directing when and where it should stop, where it should pass other trains, and all other matters connected with its running and management.    While it was at Deshler, a station on the line of said road, a telegram was sent by the train dispatcher, and delivered to the conductor and engineer, ordering them to meet and pass train No. 37 at Bairdstown, but both the conductor and engineer made the mistake of reading "Bloomdale" instead of "Bairdstown," Bloomdale being a station east of Bairdstown, and, so reading the order, ran the train past Bairdstown without stopping, the conductor of train No. 37 having an order from the train dispatcher to meet No. 88 at Bairdstown, and moving his train to that station.    The result was that the trains collided, and Reynolds was killed.    But testimony having been offered, on behalf of the plaintiff below, tending to maintain an allegation of the petition that the conductor of train No. 88 was incompetent, and the engineer not only incompetent, but of reckless habits, the court suggested to counsel that, as negligence of both the conductor and engineer, in not correctly reading their orders, was conceded, and as, in the judgment of the court, the testimony upon the other issue was not sufficient to support a finding in favor of the plaintiff, the case be allowed to go to the jury upon the sole question of the negligence of the conductor and engineer in not properly reading their orders, for the reason that, in the opinion of the court, that negligence made the defendant liable in law, and it was not therefore material or important that the jury should determine any other question.    This suggestion was accepted by counsel, and the court then proceeded to charge the jury.    The portion of the charge upon which the questions to be here decided arise is as follows:

"There is no fact to be submitted to you in this case.    The defendant, by its counsel, concedes that the conductor did not properly read his instructions, and by such negligence caused the accident complained of.    The conductor in this instance, the court instructs you, as a matter of law, represented the defendant.    The conductor's negligence, therefore, was the negligence of

the defendant, and, the plaintiff having been without fault, the defendant is liable for the injury sustained.   It is therefore solely a question of damages."

The jury returned a verdict for the plaintiff on the 24th of April, 1891, upon which, a motion for new trial having been overruled, a judgment for $4,000 was, on the 29th day of July, 1891, rendered against the defendant, and the cause was then brought to this court by proceedings in error.   The defendant in error objects to the jurisdiction, that the verdict having been found before the 1st of July, 1891, for less than $5,000, the case could not be brought here by proceedings in error.   It was held in *Railway Co.* v. *Bennett*, 49 Fed. Rep. 598, (decided by this court October 6, 1891, and reported in No. 6 of the advance parts of the United States Courts of Appeals Reports,) that while the then existing jurisdiction of the circuit courts and of the supreme court was preserved up to the 1st of July, 1891, as to all appeals pending or taken before that date, there was also a right of appeal to the circuit courts of appeal from the time the act was passed; and, consequently, that the writ of error in that case, which was taken on the 24th day of June, 1891, was properly taken, and that this court had jurisdiction of the case.   The court cited, as sustaining this ruling, *In re Claasen*, 140 U. S. 200, 11 Sup. Ct. Rep. 735.   The objection to the jurisdiction is overruled.

There is but a single exception to the charge, and that is a general one. The only question to be considered is whether, upon all the evidence, the verdict and judgment in favor of the plaintiff below should be sustained.   More precisely stated, it is whether the plaintiff in error was liable to the defendant in error for the negligence of the conductor of train 88, which it is conceded caused the collision and the death of Reynolds.   If so, the judgment must stand; if not, it must be reversed.   The facts are not in dispute.   The suggestion made by the trial judge that the allegations that the conductor and engineer of No 88 were incompetent, and the engineer reckless, were not sustained by the evidence, was accepted by counsel for the respective parties.   The jury was instructed that the conductor represented the railroad company, that his negligence was the negligence of the company, and that, Reynolds having been without fault, the company was liable for damages resulting from his death.

Counsel for defendant in error, in support of this instruction, cite numerous cases to which it may be as well at the outset to refer.   *Railroad Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184, is clearly distinguishable from this case.   There the injury to the plaintiff, a locomotive engineer, was received in a collision caused by the negligence of the conductor of the train, to whose orders he was subject.   The court held that the railroad company was liable, recognizing a distinction "between servants of a corporation exercising no supervision over others engaged with them in the same employment, and agents of the corporation clothed with the control and management of a distinct department, in which their duty is that of direction and superintendence," and that "the conductor of a railway train, who commands its movements, directs when it shall stop, at what stations it shall stop, at what speed it shall run, and

has the general management of it, and control over the persons employed upon it, represents the company, and therefore that for injuries resulting from his negligent acts the company is responsible." It is insisted for the plaintiff in error that in that case the engineer's train was a regular freight, running on schedule time, while in this case the trains were running under special orders by telegraph, directing every movement and stop. But in the *Ross Case* the conductor was under special order by telegraph to hold his train at South Minneapolis until the gravel train, which was a wild train, should pass, and it was the conductor's neglect of that order which caused the collision. Besides, there is no difference in principle between the regular printed time-table or schedule, and a special schedule or time-table sent by telegraph. In either case the movement of the train is directed by the company, and in both cases the control and management of the train under way, whatever the orders, are vested in the conductor, or generally in the conductor and engineer,—in the latter to the extent of authorizing him to disregard instructions given by the conductor in conflict with the regular schedule or with special orders; but the subordinates on the train are mere servants, entirely subject to the orders and control of the conductor, and not supposed to know the contents of special orders, or even that they exist. As to them, the company speaks through the conductor, who is therefore, in that behalf, so far as they are concerned, the representative of the company. In the *Ross Case*, the conductor failed to show his special order to the engineer, as it was his duty to do, and hence the engineer was in fact altogether a subordinate. In this case Cruder, the conductor of train No. 88, had no supervision or control over Reynolds, brakeman on train No. 37, and there was no negligence on the part of the conductor or the engineer of train 37. The negligence was exclusively that of the conductor of train No. 88. *Railroad v. Ross* is therefore not an authority in favor of the defendant in error.

*Railroad Co.* v. *Herbert*, 116 U. S. 642, 6 Sup. Ct. Rep. 590, does not apply. That case was decided upon the ground that it was the duty of the railway company to look after the condition of the cars, and see that the machinery and appliances used to move and stop them were kept in repair and in good working order, and that if the person appointed by it, and charged with that duty, neglected it, and injury resulted, the company was liable, because that person, so far as that duty was concerned, was the representative of the company. In that case a brakeman was injured in attempting to set a brake which was out of order. The court held that the railway company could not delegate to a servant its duty to keep its cars and their machinery and appliances in order, so as to exempt itself from liability for injury caused to another servant by its omission. The principle governing that case was recognized also in *Hough* v. *Railway Co.*, 100 U. S. 217, another case cited for defendant in error, as an exception to the general rule exempting the common master from liability to a servant for injuries caused by the negligence of a fellow servant. *Railway Co.* v. *Cummings*, 106 U. S. 700, 1 Sup. Ct. Rep. 493, is an authority to the point that if the negligence of the company itself had a share in producing the injury complained of to

one of its servants the company was liable, even though the negligence of a fellow servant was contributory also. But the point does not arise in this case. In *Steamship Co.* v. *Merchant*, 133 U. S. 375, 10 Sup. Ct. Rep. 397, the supreme court decided that the court below erred in not directing a verdict for the defendant, the plaintiff, the stewardess of the vessel, having fallen overboard because of the giving away of a railing at a gangway, against which she leaned in attempting to empty a bucket over the side of the vessel. The porter and the carpenter, who, the court held, were her fellow servants, had left the railing insecure, knowing that it was so. There is nothing comforting to the defendant in error in that case. In *Railway Co.* v. *Botsford*, 141 U. S. 250, 11 Sup. Ct. Rep. 1000, the last of the citations from the supreme court reports in the brief, the only question considered or passed upon was whether a court of the United States has the power to order a plaintiff, in an action for an injury to the person, to submit to a surgical examination in advance of the trial, which has not the remotest relation to any question before the court in this case. The citation was probably by mistake or inadvertence. A number of cases from the Federal Reporter are cited, but they need not be referred to in detail. The cases decided by the supreme court, and cited and to be cited in this opinion, will be found to be conclusive upon all the questions involved in this case.

We turn now to *Randall* v. *Railroad Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322, cited for the plaintiff in error. That was the first case in which the court undertook to determine who are and who are not fellow servants; not by a precise and exhaustive definition, for the law is, in its wisdom, chary of such definitions, but by giving a definition sufficient for the decision of the case. The action was by a brakeman for personal injuries received while working a switch by being struck by one of the company's locomotive engines. The court, declining to weigh the conflicting views of the courts of the several states, held that persons standing in the relation to each other occupied by the plaintiff, who was brakeman on a freight train, and the engineman of another train, who, controlling that train, and driving his engine at a speed of about 12 miles an hour, with no light except the headlight, and without ringing the bell or sounding the whistle, caused the injury, were fellow servants, neither working under the order or control of the other, and each, by entering into his contract of service, taking upon himself the risk of the negligence of the other in performing his service; and, therefore, that neither could maintain an action against the corporation, their common master, for an injury caused by such negligence. The relations of those persons, each to the other, were not in any material respect, or in a single essential, different from the relations of the plaintiff below, a brakeman on one freight train, to the conductor and engineer of the other freight train. In the *Randall Case* the engineer was in command, and by his negligence in moving his train caused the injury. In this case the conductor was in command, or, if we say the conductor and engineer were jointly in command, we do not alter the case, and, by moving the train in negligent disregard of special orders, caused the injury. It is now easy to answer the question put by counsel for defend-

ant in error, namely, suppose in the collision a brakeman had been killed also on train No. 88, and the administrator of his estate had brought suit to recover. Under the rule in the *Ross Case*, the court would direct a verdict for the plaintiff for such sum as the jury might award, instructing the jury that the conductor, by reason of his control and management of the train, represented the company, and that his negligence was the negligence of the company. Next comes on the case of the defendant in error. Upon what theory, ask counsel, could the court instruct the jury in that case that the conductor of train 88 was not the representative of the company, but only a fellow servant? This is a fair test question, in effect calling upon the court to reconcile the *Ross Case* and the *Randall Case*. They are not at variance. The expression "representative of the company" was used by the supreme court in the *Ross Case* in a limited sense, having reference to the conductor's relations to those subject to his orders, and not in an absolute or unlimited sense, which is the sense necessary to give point to the question. The court said, referring to the conductor: "In no proper sense is he a fellow servant with the fireman, the brakemen, the porters, and the engineer. The latter are fellow servants in the running of the train under his directions; as to them and the train, he stands in the place of, and represents, the corporation." Applying the expression relatively, as it was applied by the supreme court, the conductor of train 88 was the representative of the company as to the engineer, the fireman, and the brakemen on that train, because they were under his direction. But the conductor of train 88 occupied no such relation to the employes on train 37. He had no authority over them. They were entirely independent of his direction or control, being subject to the conductor of their own train, and therefore the plaintiff below was not entitled to recover. The charge was erroneous because of the failure of the trial judge to recognize the distinction above pointed out. Under the authority of the *Randall Case*, the jury should have been instructed that the plaintiff below and the conductor of train 88 were fellow servants, and a verdict directed accordingly. As it was, the conductor was recognized as the representative of the company, not only as to its employes over whom he was placed, but also as to those over whom he had no authority whatever, and was not, actually or constructively, or in any sense, a representative of the company.

The law controlling this case is well stated in *Railway Co.* v. *Devinney*, 17 Ohio St. 198, as follows:

"A railway company is not liable in damages to a brakeman on one of its trains for injuries sustained by him in a collision of his train with another train of the same company, where the collision occurred by means of the negligence of the conductor or engineer, or both, of such other train, unless it appear that the company was guilty of a want of ordinary care in the selection and employment of an incompetent conductor or engineer, through whose negligence the collision occurred."

The exception to the charge upon the trial below was well taken. The judgment will be reversed, with costs.